21-1829-cr
*United States v. Li*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 31st day of May, two thousand twenty-two.

PRESENT:
> JOHN M. WALKER, JR.
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> > *Circuit Judges.*

---

United States of America,

> *Appellee,*

> v.                                                                 21-1829-cr

Yuan Li,

> *Defendant-Appellant.*[*]

---

FOR APPELLEE:                          LINDSEY R. OKEN, Assistant United States Attorney (Kevin Trowel, Nadia E. Moore, Drew G. Rolle, Assistant United States Attorneys, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

---

[*]  The Clerk of Court is respectfully directed to amend the caption as set forth above.

FOR DEFENDANT-APPELLANT:                    DONNA ALDEA (Matthew Keller, *on the brief*),
                                            Barket Epstein Kearon Aldea & LoTurco, LLP,
                                            Garden City, NY.

Appeal from a judgment of conviction of the United States District Court for the Eastern District of New York (Cogan, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Yuan Li appeals from a judgment of conviction, entered on July 26, 2021. Following a jury trial, Li was found guilty of: (1) extortion conspiracy; and (2) aiding and abetting threatened physical violence in furtherance of a plan to extort, both in violation of the Hobbs Act, 18 U.S.C. § 1951(a).[1] These convictions related to Li's alleged assistance to Anthony Pineda, a methamphetamine dealer who operated several illegal gambling parlors in Queens, in connection with Pineda's efforts to extort an owner of a competing gambling parlor.[2] Li was sentenced principally to 30 months' imprisonment.

On appeal, Li argues that his convictions should be set aside because there was insufficient evidence that he intended to conspire with Pineda to extort the owner of a rival gambling parlor, or that he aided and abetted Pineda's threats. Instead, Li asserts that the evidence established that he merely acted as an interpreter during Pineda's meetings with the victim, who did not speak English. Li also challenges the district court's admission of evidence of Pineda's drug-dealing and gambling operations.

---

[1] Li was acquitted of the other two charges: (1) attempted Hobbs Act extortion, in violation of 18 U.S.C. § 1951; and (2) possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841.

[2] Pineda pled guilty to conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846, possessing a firearm during a drug trafficking crime, in violation of 18 U.S.C. §924(c), and threatening physical violence in furtherance of a plan to extort, in violation of 18 U.S.C. § 1951.

We assume the parties' familiarity with the underlying facts and procedural history, which we reference only as necessary to explain our decision to affirm.

## I.      Sufficiency of the Evidence

A defendant challenging a conviction based on the insufficiency of the evidence "bears a heavy burden." *See United States v. Bruno*, 383 F.3d 65, 82 (2d Cir. 2004), *as amended* (Oct. 6, 2016) (internal quotation marks omitted). Although we review such challenges *de novo*, we must affirm the conviction "if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Silver*, 864 F.3d 102, 113 (2d Cir. 2017) (internal quotation marks omitted). "In performing this analysis, we are required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury's verdict." *United States v. Willis*, 14 F.4th 170, 181 (2d Cir. 2021).

A defendant is guilty of a conspiracy if he "knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008). A defendant is guilty of aiding and abetting if he takes an affirmative act in furtherance of the offense "with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). Accordingly, to sustain Li's convictions under the Hobbs Act on both counts,[3] the government must show that Li knowingly participated in Pineda's plan to extort the owner of a rival gambling parlor, and that he aided and abetted Pineda in threatening physical violence to the victim in furtherance of that plan.

---

[3]  The Hobbs Act proscribes the obstruction of interstate commerce through robbery, extortion, or threats of physical violence "in furtherance of a plan or purpose to do anything in violation of this section." *See* 18 U.S.C. § 1951(a); *United States v. Kirsch*, 903 F.3d 213, 221 (2d Cir. 2018). The term "extortion" means "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

After reviewing the trial record, we find Li's challenge to the sufficiency of the evidence unpersuasive. Drawing all permissible inferences in favor of the government, the evidence at trial established that Li acted not merely as an interpreter, but as a knowing facilitator of Pineda's extortion plan and his accompanying threats to the victim. More specifically, Li participated in two meetings between Pineda and Tony, the owner of a rival gambling parlor, who did not speak English. At these meetings, Pineda demanded that Tony, who operated his business directly above Pineda's parlor, pay ten percent of his proceeds to Pineda. When the victim inquired as to what would happen if he did not pay, Pineda responded—through Li's translation—by asking the victim whether he "wanted to be friends or enemies." Gov't App. at 140. During the first meeting, Li not only translated Pineda's demands but, as Pineda brandished a gun after the victim refused to pay, Li said: "Tony, give it to him. We don't — you don't need all that unnecessary problems [sic] in the future." Gov't App. at 141. Similarly, at the second meeting, Li did not merely relay Pineda's words, but made his own unprompted statements to further the extortion.[4] For example, Li reminded the victim of a story to illustrate why he should pay Pineda a share of his profits for operating a competing gambling parlor in the same building: "Still remember the story I told you yesterday? You sell soda. Then I tell you — you rent me a small shop. I say I will sell bread. But after I move in, I start to sell soda. Would you be angry?" Gov't App. at 385. Additionally, without consulting Pineda, Li assured the victim that he would not be asked to pay more than ten percent in the future and stated that Pineda would verify the money earned at the gambling machines in Li's parlor by checking the meters.

Moreover, the evidence at trial demonstrated that Li's involvement with Pineda in these two meetings with the victim was part of a larger relationship of trust that Li and Pineda shared.

---

[4] This meeting was recorded by the FBI and introduced at trial as a video recording.

In particular, at the time of the extortion, Li had known Pineda for several months, gambled in his parlors, borrowed money from Pineda, and bought drugs from him.

Taken as a whole, the evidence was more than sufficient for the jury to rationally find that Li's role was not merely that of an indifferent interpreter for Pineda's conversations with the victim, but, rather, that he knowingly and purposefully participated in Pineda's extortion plan by actively encouraging the victim to submit to Pineda's demands and aiding and abetting in his threats. *See United States v. Henry*, 325 F.3d 93, 105 (2d Cir. 2003) ("The government need only show purposeful behavior aimed at furthering the goals of the conspiracy." (internal quotation marks omitted)); *United States v. Snow*, 462 F.3d 55, 68 (2d Cir. 2006) (where "the defendant was present at a crime scene under circumstances that logically support an inference of association with the criminal venture, a reasonable juror could conclude the defendant was a knowing and intentional criminal conspirator" (internal quotation marks omitted)).

Accordingly, we agree with the district court that the evidence was legally sufficient to support the jury's verdict on both counts.

## II. Evidentiary Rulings

Li also argues that the district court erred in admitting evidence offered through Pineda's ex-girlfriend Joung Hwa Yun ("Yu Mi") and various recorded communications regarding the mechanics of Pineda's ongoing and substantial drug and gambling operations. He contends that the evidence, which did not directly involve Li in any way, was improper evidence of Pineda's prior bad acts, *see* Fed. R. Evid. 404(b), and was minimally probative and unduly prejudicial with respect to the charges against Li, *see* Fed. R. Evid. 403.

We review a district court's decision to admit or exclude evidence for abuse of discretion. *See United States v. Skelos*, 988 F.3d 645, 662 (2d Cir. 2021). We will reverse such a ruling only

when it is "manifestly erroneous" or "arbitrary and irrational." *United States v. Dawkins*, 999 F.3d 767, 788 (2d Cir. 2021) (internal quotation marks omitted). "Moreover, even if a ruling was manifestly erroneous, we will still affirm if the error was harmless" and did not substantially influence the jury's verdict. *See United States v. Litvak*, 808 F.3d 160, 179, 184 (2d Cir. 2015) (internal quotation marks omitted).

As a general matter, although evidence of "any other crime, wrong, or act" cannot be used to show a person's bad character, it is admissible to prove, among other things, motive, opportunity, intent, or knowledge. *See* Fed. R. Evid. 404(b)(1), (2); *United States v. Cadet*, 664 F.3d 27, 32 (2d Cir. 2011). Thus, we "follow[] the 'inclusionary' approach to 'other crimes, wrongs, or acts' evidence, under which such evidence is admissible unless it is introduced for the sole purpose of showing the defendant's bad character, or unless it is overly prejudicial under Fed. R. Evid. 403 or not relevant under Fed. R. Evid. 402." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996) (internal citations omitted).

Moreover, evidence of other crimes or acts can be admitted without reference to Rule 404(b) if that conduct "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (internal quotation marks omitted); *see also United States v. Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) (stating that evidence of other crimes is admissible to "provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense"). The admissibility of the evidence for these additional purposes must likewise survive the Rule 403 weighing of its probative value against the danger of unfair prejudice. *See Robinson*, 702 F.3d at 37.

The district court concluded that the evidence of Pineda's methamphetamine dealing, which included wiretap calls between Pineda and others, was directly related to Li's charge of possession with intent to distribute methamphetamine because it demonstrated that Pineda could supply Li with the alleged quantities of methamphetamine during the relevant period. In addition, as the district court noted, this evidence was probative on the extortion conspiracy because Pineda's role as Li's drug supplier "provided essential context for the extortion allegations," established "the profound level of trust between the two," and "offered the jury an explanation as to Li's personal motive and interest to want Pineda's [extortion] plan to succeed." *See* Appellant's App. at 83–84. The district court further explained the highly probative value of the drug evidence in relation to the extortion conspiracy:

> Why else would Li so willingly and eagerly interpret Pineda's coercive demands and laugh at Tony's comment about Pineda brandishing a gun, but to preserve his personal relationship with Pineda? In other words, Li had every reason to please his drug dealer, les[t] he risk jeopardizing the favorable treatment he was receiving when purchasing meth.

Appellant's App. at 84. The district court concluded that the probative value of the evidence was not substantially outweighed by any danger of unfair prejudice to the defendant or misleading the jury.

The district court did not abuse its discretion in admitting evidence that established generally that Pineda was a drug dealer from whom Li purchased methamphetamines. Even if the district court erred in admitting evidence regarding Pineda's methamphetamine dealing practices unrelated to Li, any such error was harmless. The fact that Li was ultimately acquitted on the drug possession charge "underscores both a lack of unfair prejudice arising from the challenged evidence and a lack of error by the District Court in admitting it." *See United States v. Arroyo*, 600 F. App'x 11, 14 (2d Cir. 2015) (summary order); *see also United States v. Morales*, 185 F.3d

74, 83 (2d Cir. 1999) ("Partial acquittal of a defendant strongly indicates that there was no prejudicial spillover."). Given Yu Mi's and Tony's testimony as well as the September 29 audiovisual recording, even if some evidence involving Pineda's drug dealing operations was unconnected to Li's alleged possession or to the extortion charge, on this record we cannot conclude that such evidence "contributed to the verdict." *United States v. McGinn*, 787 F.3d 116, 127 (2d Cir. 2015).

The district court also admitted evidence of Pineda's illegal gambling operations to prove Li's extortion conspiracy charges. Such evidence supported Pineda's motive for extorting Tony, a rival who could threaten Pineda's business, and showed that Li frequented Pineda's gambling parlor, thus helping the jury understand the nature of their relationship. *See United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case."). There is no basis to conclude that the district court abused its discretion or that its determination failed to satisfy Rule 403's balancing requirement.

Finally, the district court further minimized any potential prejudice arising from such evidence by directing the government to "refrain from any argument that invites the jury to convict [Li] based solely on his association with Pineda" and noting that defense counsel could request a jury instruction "as to the limits of the use of this evidence."[5] Appellant's App. at 62.

In sum, we conclude that the district court did not abuse its discretion in allowing the government to introduce evidence relating to Pineda's illegal gambling operations and his

---

[5] Defense counsel did not request a limiting instruction. On appeal, Li does not assert that the district court's failure to give such an instruction *sua sponte* was reversible error.

methamphetamine dealings with Li, and any error in the introduction of evidence involving Pineda's drug distribution enterprise was harmless.

*     *     *

We have considered all of Li's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court